## In re ESCHHOLZ.*
### No. 2583.

Court of Customs and Patent Appeals.
Feb. 3, 1931.

Wesley G. Carr, of East Pittsburgh, Pa. (Franklin E. Hardy and J. B. Brown, both of Pittsburgh, Pa., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

A large number of claims of appellant, Eschholz, were appealed to this court from an adverse decision of the Board of Appeals of the Patent Office which was in affirmance of prior decision of the examiner. In his brief, appellant withdrew his appeal as to certain of them. During the oral argument others were withdrawn, and, following the argument, counsel for appellant filed a statement in writing, addressed to this court, from which we quote the following:

"This will confirm the oral statement made by Counsel during the argument of the above noted case today to the effect that applicant relies upon claims 12, 20, 21 and 23 of this appeal.

"The other claims are withdrawn because it is believed that the said above noted claims adequately cover the invention."

Since the claims are brief, they are here set out in full:

"12. The combination with a casing for electrical apparatus adapted to be immersed in insulating liquid, and a space above said liquid for inert gas, of a liquid seal for isolating said space from the atmosphere under predetermined conditions and for permitting communication therebetween under other conditions, and means for removing oxygen from such air as may enter the tank through the liquid seal."

"20. In combination, a tank, an insulating oil contained in the tank, electrical apparatus contained in the tank immersed in said oil, an atmosphere above the oil within the tank, a deoxidizing agent in contact with the atmosphere for coacting with oxygen in said atmosphere to produce a hygroscopic oxide, thus producing an inert and substantially dry atmosphere within said tank.

"21. In combination, a tank, an insulating oil contained in the tank, electrical apparatus contained in the tank immersed in said oil, a gaseous blanket above the oil comprising an atmosphere sealed within the tank, a deoxidizing agent in contact with said atmosphere for removing the oxygen therefrom, whereby the deterioration of the oil and the formation of an explosive mixture above the oil is prevented."

"23. The combination with a casing partially filled with a liquid medium and containing an overlying gaseous medium, and an electrical device submerged in said liquid medium, of means comprising a de-oxidizing agent for removing oxygen from said gaseous medium."

The claimed invention relates to the "operation and protection of large electrical apparatus, such as transformers and circuit breakers."

Appellant discloses a transformer tank containing a body of insulating and cooling oil. The tank has a cover around the outside of which there is provided a circumferential liquid seal to permit "breathing" between the air space above the oil and the atmosphere outside of the transformer tank under certain described conditions. In the tank cover there is a manhole which also has a cover. To the latter cover is secured a receptacle which is designed to contain a deoxidizing agent, such as phosphorous, to remove the oxygen from such air as may be within the transformer casing, and, when converted to phosphorous pentoxide, to absorb such moisture as may be contained in the atmosphere.

The references cited are:

Blanchard, 96871, November 16, 1869.

Wallace et al., 1154145, September 21, 1915.

*Appellant's petition for rehearing granted.

Green, 1326049, December 23, 1919.

Hauser, 1534448, April 21, 1925.

The claims specifically held by the tribunals of the Patent Office to be anticipated solely by Blanchard are among those withdrawn. The examiner rejected claim 12 "on Green and Wallace in connection with Hauser," while claims 20, 21, and 23 were "technically rejected as not supported by the disclosure," the examiner in his statement saying:

"These claims recite an electrical device as an element of the combination. No such device is shown in the drawing and the object of the invention is stated to be to provide a tank adapted to contain electrical apparatus. Although it may be permissible to amplify the disclosure to show electrical apparatus it is believed that this group of claims would then be rejectible on the references now in the case."

Of these latter the board said:

"The examiner has objected to the reference to electrical devices in some of the claims whereas none is shown in the drawings. While this is not believed to be patentably important in view of the state of the art, still for the purpose of complying with the rules and thereby maintaining accuracy in practice the heading of claims * * * 20, 21 and 23 should be made like claim 4 or some diagrammatic showing added to the drawing, preferably the former."

With these eliminations, corrections, etc., made, the gist of the matter before us, as expressed in the quoted claims, remains, as stated by the board:

"This application discloses attachments for the oil filled casings for high tension switches and transformers for rendering the gas in the expansion space above the oil inert, by removing all oxygen and moisture therefrom. This is accomplished in this instance by providing means to hold a quantity of chemical such as phosphorous which has an affinity for oxygen and indirectly for moisture at ordinary temperatures."

The board then stated the prior art disclosed this matter, saying:

"In the patent to Green an atmosphere of dehydrated nitrogen is provided, which may fluctuate between the free space and a gasholder. No natural atmosphere is allowed to enter.

"Hauser shows a transformer in which natural atmosphere may enter during changes of temperature of the apparatus and means to absorb moisture from any air that enters.

"Wallace and Blanchard show that as a chemical step the oxygen may be directly removed from air leaving pure nitrogen. In Wallace the moisture would also necessarily be removed from the air or other gas treated since he uses phosphorous as the reagent to combine with the oxygen the same as in applicant's apparatus and the phosphorous pentoxide would absorb moisture."

We have very carefully examined appellant's claims. That he has wrought an improvement in this art may be admitted, but, like the tribunals in the Patent Office, we fail to see wherein patentable invention appears.

It is true, as appellant argues, that Green's disclosure calls for preventing "air and moisture from entering the tank by pumping dry inert gas into it." Whether this can be successfully done as Green proposes we do not know. The point appears to be that he teaches the desirability of a gas free from oxygen and moisture, and proposes to procure this condition by preventing the natural atmosphere from entering. But if he be unable to do this and air does enter, as appellant contemplates, then Hauser and Wallace appear fully to have taught what appellant in his combination discloses, dehydration and deoxidation with means for accomplishing both.

The combination which appellant has made seems to be simply a combination of known elements, or elements taken from the prior art, which does not produce the new and useful result requisite under the law to render it patentable. In re Bayer, 35 F.(2d) 66, 17 C. C. P. A. 614. In re Appelburg et al., 37 F.(2d) 620, 17 C. C. P. A. 820.

The decision of the Board of Appeals is affirmed.

Affirmed.